UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY ELLIS )<br>13408 Harrison Avenue )<br>Fort Washington, MD 20747 )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　　Plaintiff, 　　　　　　　　 )<br>v. 　　　　　　　　　　　　　　　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>JAMES N. MATTIS, 　　　　　　　　 )<br>in his official capacity as Secretary of Defense, )<br>DEPARTMENT OF DEFENSE 　　　 )<br>Office of the Secretary of Defense 　　 )<br>1000 Defense Pentagon 　　　　　　　 )<br>Washington, DC 20301-1000 　　　　 )<br>　　　　　　　　　　　　　　　　　　 )<br>　　　　　Defendant. 　　　　　　　　 )<br>_____ ) | Case No.: _____<br><br><br><br>JURY TRIAL DEMAND |

# COMPLAINT

## PRELIMINARY STATEMENT

1. This is an employment action for Discrimination based on Disability, both physical and mental, non-sexual harassment, and for Retaliation, Reprisal and creation of a Hostile Work Environment, and ultimately a Constructive Discharge arising out of Plaintiff's employment with the Department of the Navy, where at the time giving rise to these allegations, he worked as an Archivist in the History and Heritage Command.

2. Plaintiff, Mr. Gregory T. Ellis ("Ellis" or "Mr. Ellis"), brings this action against James N. Mattis ("Mattis"), in his official capacity as Secretary of Defense and against the Department of Defense ("DoD") (sometimes referred to individually or collectively as "Defendant" or the "Defendants") for violations of Title VII of the Civil Rights Act, 42 U.S.C. 2000e; the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA

Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"); and the Rehabilitation Act of 1973, 29 U.S.C. 701.

3. Mr. Ellis was hired by the Navy on 24 May 2010 as an Archives Specialist (GS-07/01/1420) and promoted on 4 March 2014 to Archivist (GS-9/5/1420) in the History and Archives Division at the Naval History and Heritage Command. During his tenure with the Navy, Mr. Ellis consistently performed above his pay grade to accomplish the mission of the command. From 2010 through 2014 he was granted occasional telework. In 2014 he became seriously ill necessitating extended leave under the Family and Medical Leave Act, with a worsening of his already established disability. Mr. Ellis consistently received satisfactory or better performance reviews, and was awarded bonuses for innovation and performance in the division. Despite Mr. Ellis' many achievements, Defendant discriminated against Mr. Ellis by denying his requests for reasonable accommodation for his disability, and thereafter retaliating against him for his protected activity. Furthermore, Defendant created an overwhelmingly hostile work environment resulting in a constructive discharge of Mr. Ellis. As a result, Mr. Ellis has suffered significant psychological, emotional and monetary damages in addition to the loss of his job and unmerited suspensions on his personnel record.

**PARTIES**

4. <u>Plaintiff:</u> Gregory T. Ellis, was and is at all times relevant to this Complaint, a resident of Maryland and a federal employee, employed by the Department of the Navy, at Headquarters at the Washington Navy Yard, Washington D.C. 20003.

5. <u>Defendant:</u> James N. Mattis is the current Secretary of Defense for the U.S. Department of Defense.

6. Defendant Mattis is being sued in his official capacity as the Secretary of Defense. On information and belief, Mattis is a nominal defendant only who, pursuant to Title VII, must be named as a party defendant. It is not believed at this time that Mattis has any personal knowledge of, or engaged in any discriminatory conduct toward Ellis. The true actors at issue are named in the Complaint below.

7. The Department of the Navy is a military service branch under the Department of Defense.

## JURISDICTION AND VENUE

8. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1346 as this action involves federal defendant and similarly involves federal questions regarding the deprivation of Mr. Ellis' rights under Title VII of the Civil Rights Act, 42 U.S.C. 2000e; the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"); and the Rehabilitation Act of 1973, 29 U.S.C. 701.

9. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391 because Plaintiff was employed by the Agency in the District of Columbia and events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

10. Mr. Ellis served on active duty in the U.S. Navy as a Hospital Corpsman (Field Medical Service Technician) from 1995 until his honorable discharge in 2001, where he served as, among other things, a Medical Evacuation Flight Coordinator (MEDEVAC) and as a member of the Fleet Marine Force (FMF).

11.     During his tenure in the Navy Mr. Ellis received several commendations, including the Navy Good Conduct Medal and Navy and Marine Corps Achievement Medal.

12.     While on active duty Mr. Ellis suffered significant trauma and injuries (Transient Ischemic Attack/Stroke) which resulted in persistent migraine headaches.  On February 1, 2002 Mr. Ellis was determined to have a 30% service related disability due to his migraine headaches. He was re-evaluated again in November 2006 and his disability was re-certified, as there was no change to his condition.

13.     Beginning in 1998 and continuing after his discharge from active duty in 2001, Mr. Ellis served in a civilian capacity as a GS-05/06 medical records manager at the National Naval Medical Center in Bethesda, Maryland.

14.     Mr. Ellis performed well in this role and was promoted in 2002 to GS-06 Occupational Health Technician at the Surface Warfare Center in Indian Head, Maryland where he served until 2004 at which time he resigned to attend University full-time.

15.     Mr. Ellis received his Bachelor's degree in Arts and Humanities from the University of Maryland, College Park in 2007.

16.     After earning his bachelor's degree Mr. Ellis returned again to the Federal Service. In 2008 Mr. Ellis joined the Naval History and Heritage Command in Washington D.C. as a GS-06/07 Archives Technician in their History and Archives Division.

17.     In January 2010, Mr. Ellis resigned from the Federal Service to accept a position as a Lead Records Analyst position with a defense contractor.

18.     In May 2010 Mr. Ellis was personally invited by Mr. Curtis Utz to apply for and return to the Naval History and Heritage Command as a GS-07/09 Archives Specialist in the History and Archives Division. He was formally offered this position and he subsequently

accepted. Supervisors Mr. Curtis Utz and later Mr. Daniel Jones accommodated Mr. Ellis' disability and extended telework if requested.

19. Mr. Ellis was promoted to GS-09/11 (Archivist) in March 2014, a role he remained in until January 2018.

20. During his tenure at the command, Mr. Ellis' work performance met or exceeded Defendants' legitimate expectations; he consistently performed at superior levels of performance.

21. In 2009, Ellis received a sizable monetary award for the development and implementation of a staffing plan, which addressed backlog and relieved manpower concerns across the command at little or no cost to the established budget.

22. In 2011, under his own initiative, Ellis personally sought and was subsequently awarded a monetary grant from a civilian firm for Disaster Preparedness and Remediation training. He led successful damage remediation in the wake of an earthquake later that year due to his specialized skills, knowledge and abilities.

23. Mr. Ellis operated in a role well above his paygrade that benefited the command due to the lack of similarly trained employees.

24. Reviews of Mr. Ellis' performance under the National Security Personnel System reflect 4.5 out of 5.0, and under the General Schedule his reviews were consistently excellent, receiving on-the-spot monetary awards as recent as 2017. He also volunteered in outreach programs above his paygrade; serving in a public-speaking role, he represented the command as Chairman and Presenter at two professional archives conferences in 2012 and 2013.

25. Defendant recognized Mr. Ellis' aforementioned accomplishments by promoting him through the ranks and consistently giving him raises each additional year of his tenure with

the Navy. He was presented with an award recognizing his 15 Years of Federal Service during this period.

26. Mr. Ellis, having been diagnosed with severe migraines in 2002 and re-evaluated by the Department of Veteran's Affairs ("VA") in November 2006, is a qualified individual with a disability under the Americans with Disabilities Act of 1990, as amended and a service-disabled veteran. As a result of Mr. Ellis' disability, major life activities, such as visual acuity, sleeping, reading, concentrating, and working are substantially limited.

27. Additionally, Mr. Ellis' major bodily functions including, but not limited to his brain, are substantially limited. His disability has worsened since 2014, accompanied by separate diagnoses of depression and anxiety attacks, requiring regular visits to a mental health care provider.

28. In accordance with his disability diagnosis, which pre-dated his employment with the Navy, Mr. Ellis requested a reasonable accommodation from his new first-line supervisor Mr. James Allen Knechtmann in 2015. His reasonable accommodation request consisted of the ability to telework when he was unable to drive due to visual acuity concerns.

29. Mr. Ellis provided the Defendant with doctors' notes and VA disability letters to support his request for teleworking.

30. Despite Mr. Ellis' numerous requests for a reasonable accommodation throughout 2015 and 2016, Defendant refused to provide reasonable accommodation.

31. Relying on a subjective, non-medical assessment, Defendant improperly claimed that Ellis was not disabled and in doing so rejected the best available medical evidence from his treating physician, documenting the nature and severity of the disability and the attendant conditions.

32. Indeed, Ellis' supervisor claimed that the written documentation of his disability from his doctor was "irrelevant."

33. At the same time, and in response to requests for reasonable accommodation, Mr. Knechtmann, Plaintiff's first line supervisor and Mr. Christian Higgins, his second line supervisor, belittled and marginalized Plaintiff in the workplace.

34. These same supervisors had provided similarly-situated employees to Plaintiff better treatment.

35. Significantly, Defendant has accommodated similarly-situated employees in the past by permitting liberal teleworking.

36. For example, Assistant Deputy Director Ms. Sharon Baker enjoyed unlimited teleworking from 2015 through 2017 for an unspecified service-connected disability. Ms. Melissa Walker was also afforded excessive telework during her tenure as a manager due to an unspecified disability. Mr. Joel Westphal also publicly stated he suffered from migraines; in turn he was liberally afforded a period of leave after an arrest onboard the Washington Navy Yard following his menacing of a female employee. Ms. Alexis Hammersmith has been afforded her own office with liberal telework due to her migraines despite not being a disabled veteran.

37. These comparators, establish disparate treatment and lack of reasonable accommodation, for Plaintiff.

38. On 18 February 2016, Mr. Ellis made a specific complaint to Director Samuel Cox, RADM (Ret.) about the lack of accommodations shown him by his supervisors and the discriminatory treatment and harassment of Mr. Ellis, which had occurred.

39. The prolonged and sustained discriminatory treatment, led Mr. Ellis to inform Director Cox, that Ellis was being forced to resign, due to a lack of accommodation and due to persistent, continuous harassment in the workplace.

40. Director Cox responded that Mr. Ellis should not suffer such treatment, promised that it would stop, and asked that he re-consider his resignation. Accordingly, Mr. Ellis rescinded his resignation under the belief and understanding that the discrimination and harassment towards him would cease.

41. Unfortunately, the discrimination and harassment did not end there. On 7 March 2016, Mr. Ellis was issued a Letter of Requirement by Christian D. Higgins, Supervisory Archivist for the Processing Section, History and Archives Division. The Letter was both an act of discrimination in its own right and an act of retaliation and reprisal for complaining about discrimination in the workplace.

42. Despite Director Cox's assurances, Ellis was not accommodated and he continued to suffer harassment and reprisal.

43. Further, at no time did the Agency engage in the interactive process to address Mr. Ellis' request for an accommodation, nor did it cite any undue hardship to honoring his requests.

44. Instead, Defendant accelerated their harassment and hostility toward Mr. Ellis continuing throughout 2017, including the issuance of the aforementioned Letter of Requirement on 7 March 2016.

45. Plaintiff, faced with a hostile work environment and retaliation for his assertion of protected rights, resigned involuntarily on 19 January 2018, noting the reasons for his separation from the federal service.

46. Defendant effectively and constructively discharged Mr. Ellis by creating an atmosphere of hostility in the workplace that severely impacted Mr. Ellis' health, both physically, emotionally and mentally.

47. Defendant's actions were retaliatory due to Mr. Ellis' complaints of discrimination.

**COUNT ONE**
**Violation of the Rehabilitation Act of 1973; Discrimination based on Disability**

48. Paragraphs 1-46 are realleged and incorporated by reference as if fully set forth herein.

49. The Rehabilitation Act of 1973, which incorporates the standards of the Americans with Disabilities Act as Amended, provides that an individual has a disability if he has "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1).

50. On or about February 1, 2002, Mr. Ellis was diagnosed with severe migraine headaches and given a disability rating of 30%, making him a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111 of the ADA as amended. He was re-evaluated in November 2006; the earlier diagnosis was again recognized.

51. Mr. Ellis could perform the essential functions of his position with, or without, a reasonable accommodation.

52. Mr. Ellis had repeatedly notified Defendant about his disability. To address conditions related to his impairment, Plaintiff requested a reasonable accommodation for occasional telework due to migraines in 2010 and in 2015. He sought telework sporadically, preferring to take leave when stricken with migraines. Mr. Curtis Utz and Mr. Daniel Jones recognized Mr. Ellis' disability. Later supervisors Mr. Allen Knechtmann, Mr. Joel Westphal and

Mr. Christian Higgins refused to acknowledge this disability despite the provided medical certifications, most specifically by Mr. Higgins on 18 August 2016.

53. Defendant also refused to engage in the interactive process and denied Mr. Ellis' request claiming that his disability was "irrelevant."

54. In addition, on 26 November 2016 Mr. Higgins vindictively assigned Mr. Ellis to a physically demanding project that was ostensibly designated as "high-priority;" the project required the efforts of multiple persons and dictated the use of personal protective equipment. Beginning 28 November 2016 Mr. Higgins actively denied assistance to Mr. Ellis and failed to provide adequate personal protective equipment to him despite multiple requests from that time on. This project resulted in regular physical injuries to Mr. Ellis and only after he detailed photographic evidence of his injuries to Mr. Higgins's own supervisor on 22 February 2017 was the project halted. A subsequent investigation Occupational Safety and Health Administration audit, performed by Navy Industrial Hygiene, supported Mr. Ellis' complaint.

55. Defendant also regularly made discriminatory comments to Mr. Ellis and his co-workers regarding Mr. Ellis' disability and Family and Medical Leave Act status. For example, on 7 March 2017 Mr. Higgins stated to Mr. Ellis that he deemed both his disability and documentation of such as "irrelevant." In addition, Mr. Knechtmann was reported in writing to Assistant Deputy Director Sharon Baker on 15 December 2015 by Mr. Ellis and another employee for several public instances of verbal abuse and disparaging comments about current employees. Specifically, Mr. Knechtmann accelerated his antagonistic behavior towards Mr. Ellis after Mr. Knechtmann was named in a separate EEO case.

56. The rejection of medical evidence of the disability and the insertion of the employer's own subjective assessment, which discounted the disability and its need for

accommodation, was a violation of the Rehabilitation Act of 1973 and part of an overall hostile work environment.

57.     On information and belief, the Defendant failed to segregate Plaintiff's protected medical information supporting the disability claim, such conduct would violate the strictures of the Rehabilitation Act of 1973.

58.     Mr. Ellis suffered damages as a result of Defendants' unlawful discriminatory actions, including physical injuries and emotional distress, past and future lost wages and benefits, unlawful suspensions on his personnel record which will impact future employment opportunities, his two instances of utilizing the Family Medical and Leave Act for medical care, and the costs of bringing this action, including attorney's fees.

**COUNT TWO**
**Retaliation and Reprisal for Prior Protected Activity under**
**Title VII of the Civil Rights Act**

59.     Paragraphs 1-57 are realleged and incorporated by reference as if fully set forth herein.

60.     Title VII's anti-retaliation provision makes it unlawful for an employer to "discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee or applicant] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).

61.     Title VII's anti-retaliation provision protects an employee who engages in "opposition" to "any practice made an unlawful employment practice" by the statute.  *Id.*

62. To make out a prima facie claim of retaliation, a plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) the employer took an adverse personnel action; and (3) a causal connection existed between the two. *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985); *McKenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1984).

63. On 18 February 2016 Mr. Ellis engaged in protected activity when he notified Director Samuel Cox, RADM (Ret.) directly about his discriminatory treatment and harassment.

64. On 6 December 2016, Mr. Ellis engaged in protected activity by complaining to Inspector General Al Pierson about Mr. Joel Westphal and Mr. Christian Higgins' continuing discriminatory treatment based on Mr. Ellis' disability, leave usage, and requests for a reasonable accommodation. Specifically, Mr. Ellis told Mr. Pierson that he had previously been suspended in 2014 by Ms. Sharon Baker due to his appointment in Building 200 with the Inspector General.[1] Mr. Pierson responded that any professional discussion with Inspectors General is considered protected communication and that it was subsequently illegal for the command via Ms. Baker to suspend Mr. Ellis under that provision.

65. In February 2017 Mr. Ellis initiated the complaint process for disability discrimination with the EEO office.

66. In September 2017 Mr. Higgins threatened to terminate Mr. Ellis.

67. In November 2017, eight months after Mr. Ellis formally complained of disability discrimination, Defendant attempted to "constructively discharge" Mr. Ellis allegedly because of "Careless Workmanship" and "Failure to Follow Established Leave Procedures" to ostensibly

---

[1] While such disclosure is a protected disclosure under federal EEO law, it would also implicate other laws as well. Any retaliation or reprisal for cooperating with the Inspector General would violate both the Inspector General's Act and 5 U.S.C. Section 2302(b)(9).

"Promote the Efficiency of the Service," notwithstanding Mr. Ellis's outstanding history of merit at the command.

68. Defendant's alleged reason for constructively discharging Mr. Ellis' employment is pretextual and baseless. Defendant attempted to fire Mr. Ellis because he complained of disability discrimination and harassment on multiple occasions, specifically on 15 December 2015, 22 August 2016, 28 September 2016, 18-22 February 2016, and through a formal EEO complaint on 5 March 2017.

69. Mr. Ellis was qualified for his position and capable of performing all essential functions when Defendants constructively discharged him.

70. Mr. Ellis suffered damages as a result of Defendants' unlawful retaliatory actions, including two suspensions on his personnel record in 2014 and 2016, physical injury, emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT THREE
### Retaliation for FMLA Leave

71. Paragraphs 1-69 are realleged and incorporated by reference as if fully set forth herein.

72. Prior to 2014 Mr. Ellis had been employed by the Navy for more than twelve months and had worked in excess of 1,250 hours in the preceding twelve months.

73. Mr. Ellis was an eligible employee under the Family and Medical Leave Act.

74. Mr. Ellis suffered a serious health condition which rendered him unable to work.

75. Due to his health condition Mr. Ellis took approximately twelve weeks off of work from May to July 2014.

76. In 2016 Mr. Ellis was still an eligible employee under the Family and Medical Leave Act.

77. Mr. Ellis again suffered a serious health condition which rendered him unable to work.

78. Due to his health condition Mr. Ellis took approximately eight weeks off of work from June to July 2016.

79. Mr. Ellis was entitled to up to twelve workweeks of leave in both 2014 and 2016.

80. Due to Mr. Ellis taking leave from work due to his serious medical condition, the Navy retaliated against him by creating an abusive and hostile work environment and threatening his termination as described herein.

81. As a result of Mr. Ellis taking permitted leave under the Family and Medical Leave Act, the Navy further retaliated against him by constructively discharging Mr. Ellis in January 2018.

82. Mr. Ellis suffered damages as a result of Defendants' unlawful retaliatory actions, including physical injury, emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

## COUNT FOUR
### Hostile Work Environment based on Disability

83. Paragraphs 1-81 are realleged and incorporated by reference as if fully set forth herein.

84. A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir. 2003).

85. Defendant's repeated disregard for Mr. Ellis' medical condition and necessity of accommodation, as well as continued comments about his disability as "irrelevant" created an abusive and unbearable environment in which Mr. Ellis could not work.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury for all claims herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Accept jurisdiction over this matter;

B. Award Plaintiff for his past and future loss of wages and benefits, plus interest;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff back pay (including benefits);

E. Award Plaintiff front pay (including benefits);

F. Removal of 2014 and 2016 suspensions from his personnel record.

G. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

> Respectfully submitted,
>
> GREGORY T. ELLIS
> By Counsel
>
> _____
> Kevin E. Byrnes, D.C. Bar No. 480195
> FH+H, PLLC
> 1751 Pinnacle Drive, Suite 1000
> Tysons, VA 22102
> T: 703.590.1234
> F: 703.590.0366
> kbyrnes@fhhfirm.com
> Counsel for Plaintiff