UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GREGORY ELLIS,<br><br>    Plaintiff,<br><br>        v.<br><br>JAMES N. MATTIS, in his official capacity as U.S. Secretary of Defense,<br><br>    Defendant. | Civil Action No. 18-1255 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Gregory Ellis claims that while working for the United States Navy, he was subjected to discrimination, retaliation, and a hostile work environment because of his disability. He thus brought this suit against Secretary of Defense James N. Mattis, asserting violations of the Rehabilitation Act, Title VII, and the Family Medical Leave Act. The Secretary now moves to dismiss all but the FMLA claim, principally arguing that Plaintiff failed to exhaust his administrative remedies or state a plausible hostile-work-environment claim. Agreeing that none of the challenged claims as currently pled may proceed, the Court will grant the Motion.

**I.    Background**

Assuming the facts in the Complaint are true, as it must at this stage, the Court begins with Plaintiff's active duty in the Navy from 1995 to 2001. He suffered a stroke or transient ischemic attack during that time, resulting in "persistent migraine headaches" that continue to this day. See Compl., ¶¶ 10–12. These migraines "substantially limit[]" Ellis's "visual acuity, sleeping, reading, concentrating, and working." Id., ¶ 26. In 2002, the Department of Veterans Affairs concluded that he had a 30% service-related disability from his migraines, a

1

determination it recertified in 2006. Id., ¶ 12. "His disability has worsened since 2014," when Ellis was "separate[ly] diagnose[d]" with depression and anxiety attacks. Id., ¶ 27.

As relevant here, Ellis worked as an Archives Specialist and Archivist for the Naval History and Heritage Command in Washington, D.C., from around 2010 until January 2018. Id., ¶¶ 3, 19. His responsibilities included accessioning and deaccessioning records – *i.e.*, transferring Navy records to and from the custody of the National Archives. See ECF No. 8 (Def. MTD), Exh. A (Investigative File) at ECF p. 26; see also National Archives and Records Administration, Accessioning Guidance and Policy (Mar. 10, 2017), https://www.archives.gov/records-mgmt/accessioning. He was also charged with performing "[v]arious data entry procedures for documents" and "physical labor" such as "moving boxes, file cabinets, [and] packaging records." Investigative File at ECF p. 26.

Plaintiff claims that his supervisors initially accommodated his migraines by allowing him to telework upon request. See Compl., ¶¶ 3, 18, 52. At some point during 2015, however, this accommodation allegedly ceased when Ellis began working with new supervisors. Id., ¶¶ 28–34. Although Defendant continued to "permit[] liberal teleworking" by other employees in the History and Heritage Command, Ellis claims that his new supervisors denied him that accommodation on "numerous" occasions in 2015 and 2016. Id., ¶¶ 30, 35–36. Instead, they "belittled and marginalized" him, with one supervisor remarking that the medical documentation of his disability was "irrelevant." Id., ¶¶ 32–33.

As a result of this treatment, Plaintiff alleges that he felt pressure to resign. Id., ¶ 39. In February 2016, he met with the Command's Director — Samuel Cox — to explain that he was leaving because of a "lack of accommodation" and "persistent, continuous harassment in the workplace." Id., ¶¶ 38–39. Plaintiff also met with Assistant Deputy Director Sharon Baker

around the same time, who encouraged him not to resign by saying that the Command could "work out an accommodation with a variable schedule." Investigative File at ECF p. 28. After receiving similar assurances from Director Cox "that the discrimination and harassment towards him would cease," Ellis "rescinded his resignation." Compl., ¶ 40. According to Plaintiff, the Navy never followed through with these promises. Id., ¶¶ 42–43, 53.

Rather, Ellis claims that the discrimination and harassment against him "accelerated" when supervisors learned of his decision to rescind his resignation. Id., ¶ 44. He focuses on a March 7, 2016, Letter of Requirement issued by one of his supervisors that "outline[d] the procedures for taking unscheduled leave." Id. This letter faulted Ellis for his "leave use during the previous calendar year." Investigative File at ECF p. 35. Ellis asserts that the Letter of Requirement was imposed because of his disability. Id. at ECF p. 34.

After the Letter of Requirement was issued, Plaintiff submitted — and one of his supervisors approved — an application for leave pursuant to the Family Medical Leave Act. Id. at 10. His application mentioned treatment for "anxiety, depression, and panic attacks." Id. at 11. The Letter of Requirement's procedures remained in effect, however, for any leave "not directly related to" these conditions. Id. When Ellis failed to follow the Letter of Requirement's procedures on August 16, 2016, one of his supervisors proposed a two-week suspension for being away without leave and failing to follow established leave procedures. Id. at 10, 19. The supervisor reasoned that Ellis was AWOL because "the FMLA certification was for the treatment of anxiety, depression, and panic attacks and does not cover migraines." Id. at 10. Ellis protested that "these symptoms accompany each other almost always," and that, given his migraines, he "could hardly travel [to his primary-care provider] without endangering [himself] or others." Id. at 9–10. The two-week suspension was ultimately imposed. Id. at 19–22.

Ellis filed a formal complaint with the Navy's Equal Employment Opportunity Office in 2016, asserting disability discrimination, retaliation/reprisal, and a hostile work environment. See Investigative File at ECF pp. 4-7. In support of his 2016 claims, Ellis cited, *inter alia*, "a continued pattern" of "derisive statements, ridicule[,] and mockery" by his supervisors; "harassment in [an] effort[] to pressure resignation"; "[c]ontinued harassment . . . regarding [his] decision to rescind [his] resignation after exit interviews with NHHC Director Cox and Sharon Baker"; the March 7, 2016, Letter of Requirement; and "repeated . . . refusals to consider past medical documentation & present disability status." Id. at ECF p.6. Plaintiff subsequently amended his complaint with the assistance of EEO counselors, including a challenge to his suspension for being AWOL. Id. at ECF pp 16-18.

Waiting for a decision in 2017, Ellis requested the appointment of an administrative-law judge and a right-to-sue letter from the Equal Employment Opportunity Commission. See ECF No. 10 (Pl. Opp.) at 6; Def. MTD at 7. He ultimately "resigned involuntarily" on January 19, 2018, citing "a hostile work environment and retaliation for his assertion of protected rights." Compl., ¶ 45. The EEOC subsequently dismissed Ellis's claims on March 1, 2018, and this suit followed. See Pl. Opp. at 6; Def. MTD at 7.

Count I claims that the Navy discriminated against Plaintiff because of his disability in violation of the Rehabilitation Act. See Compl., ¶¶ 48-58. More specifically, Ellis alleges that Defendant failed to provide a reasonable telework accommodation, "vindictively assigned" him to a "physically demanding project" that had to be halted because of safety concerns, "regularly made discriminatory comments," and failed to segregate his protected medical information. Id., ¶¶ 51–57. Count II alleges that the Navy violated Title VII by retaliating against Plaintiff for engaging in the protected activity of reporting on his supervisors' alleged treatment. Id., ¶¶ 59-

4

70. According to Ellis, the Letter of Requirement, the suspension for failing to comply with it, and the alleged constructive discharge all constituted retaliatory acts. Id., ¶¶ 41, 68–70. Based on the same acts, Count III asserts that the Secretary retaliated against Plaintiff for using FMLA leave. Id., ¶¶ 71-82. Finally, Count IV alleges that the treatment by Plaintiff's supervisors described above created a hostile work environment. Id., ¶¶ 83–85.

Defendant now moves to dismiss Counts I, II, and IV. He argues both that Ellis did not administratively exhaust these three claims and that he fails to sufficiently allege a hostile environment.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations marks and citation omitted). In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial School, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (internal citations omitted). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint. Trudeau

v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Even at the Rule 12(b)(6) stage, a Court can review "documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). In this case, Defendant has included its Investigative File for Ellis with its Motion to Dismiss. Plaintiff's Complaint frequently nods to the information in this File, including correspondence related to his Letter of Requirement, communications with higher-ups in his Command, and his initiation of an administrative complaint. See Compl., ¶¶ 38–44, 55, 63–65. He also necessarily relies on the Investigative File to satisfy his obligation to exhaust administrative remedies. See Pl. Opp., Exh. A (Affidavit of Gregory T. Ellis), ¶¶ 9–19. The Court may, therefore, properly consider the File without converting Defendant's Motion into one for summary judgment.

Under Federal Rule of Civil Procedure 12(b)(1), conversely, a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13–14

(quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

## III. Analysis

Given that Defendant invokes different grounds for the dismissal of each of the three challenged counts, the Court looks at them separately.

### A. Count I: Rehabilitation Act Discrimination

Before bringing suit under the Rehabilitation Act, a plaintiff must first exhaust his administrative remedies. Huang v. Wheeler, 215 F. Supp. 3d 100, 107–08 (D.D.C. 2016). Here, the Secretary does not dispute that Ellis raised disability discrimination in his EEO complaint, but instead argues that his current Rehabilitation Act claim is "premised on different factual allegations" from those alleged at the EEO stage. See Def. MTD at 14. The Court, accordingly, must examine whether his Complaint's allegations are "like or reasonably related to," and "grow[] out of," Ellis's allegations at the administrative level. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995) (internal citation omitted). Put another way, exhaustion requires that Ellis's claims "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." Id. (internal quotation marks and citation omitted). As exhaustion of Count I is jurisdictional, it is appropriately analyzed under Rule 12(b)(1): "[T]he

7

filing of an administrative complaint constitutes a jurisdictional prerequisite to suit" under the Rehabilitation Act. Williams v. Brennan, 320 F. Supp. 3d 122, 128 (D.D.C. 2018).

The anti-discrimination provision of the Rehabilitation Act requires that federal employers like the Navy, *inter alia*, "take reasonable affirmative steps to accommodate the [disabled], except where undue hardship would result." Porfiri v. Eraso, 121 F. Supp. 3d 188, 196 (D.D.C. 2015) (quoting Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993)). Defendant principally argues that Plaintiff failed to exhaust with respect to Count I because he "did not pursue a reasonable accommodation claim based on teleworking at the administrative level." MTD at 13. Plaintiff counters that "the contents of the administrative claim are sufficiently related to the claims raised in the Complaint." Pl. Opp. at 11.

Defendant has the better of the argument. Ellis's administrative complaint is hardly a barebones document; on the contrary, he lists ten separate incidents or courses of conduct and describes a number in detail. See Investigative File at ECF pp. 6-7. Yet the question of a reasonable accommodation for telework never appears. More damning is that, in connection with the EEO investigation in 2016, Ellis frankly stated that he "never asked for an accommodation because I don't think I need one." Id. at ECF p. 28. Even more specifically, Plaintiff explained "why I don't request to telework" – *i.e.*, because Ellis "could not stare at a computer for nine hours when I have a migraine." Id. It is difficult to see how requesting telework is "like or reasonably related to" foreswearing telework. See Park, 71 F.3d at 907.

Ellis argues that the Secretary "has taken this alleged admission out of context." Pl. Opp. at 17. He insists that he has exhausted this claim because the interview statement is "consistent" with "tak[ing] leave when actually experiencing a migraine," while still "us[ing] telework as an accommodation." Id. at 18. The Court thinks this is a stretch. For one thing, Plaintiff does not

8

dispute his admission at the administrative level that he "never asked for an accommodation." Second, the interview transcript defines the scope of the investigation as: "Was the Complainant, Gregory Ellis, subjected to a hostile work environment, reprisal (previous EEO activity, 2014) and physical disability (Migraines) . . . ?" Investigative File at ECF p. 23. In other words, reasonable accommodation never appears in the description of the claim being investigated. Third, although Plaintiff argues that in the same 2016 interview, he "and the interviewer . . . discuss[ed] that telework would be an accommodation to help prevent migraines and to get back to work faster when [his] migraines subsided," Pl. Opp. at 18, the Court searches in vain for such a discussion. See Investigative File at ECF p. 28 (discussing a "variable schedule" for Ellis to "come in at a certain time and leave at a certain time," without any reference to teleworking). Ellis, in sum, raised many issues in his lengthy interview, id. at ECF pp. 23-37, but telework was not one of them. Compare Lenkiewicz v. Castro, 146 F. Supp. 3d 99, 106–07 (D.D.C. 2015) (holding that references in administrative complaint to denial of telework request "satisfy [the] requirement that the plaintiff must file an administrative complaint before seeking relief in federal court").

Although not the focus of Count I, three other ancillary allegations of disability discrimination appear therein. First, Ellis alleges that the Navy "on 26 November 2016 . . . vindictively assigned [him] to a physically demanding project," Compl., ¶ 54, yet that claim does not appear in his administrative complaint, nor could it since it occurred seven months after the administrative filing. Ellis also cites to "discriminatory comments . . . regarding [his] disability," id., ¶ 55, but such comments could not clear the Rule 12(b)(6) hurdle because they do not amount to an adverse action since they did not constitute "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different

9

responsibilities, or a decision causing significant change in benefits." Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (citation omitted). Finally, Ellis alleges that "Defendant failed to segregate Plaintiff's protected medical information supporting the disability claim." Compl., ¶ 57. Even if he had explained what this means, such an allegation never appears in his administrative filing and has thus not been exhausted. Because Ellis did not exhaust any of Count I's allegations, the Court will dismiss this cause of action for lack of subject-matter jurisdiction.

B. Count II: Title VII Retaliation

To state a claim for retaliation under Title VII, a plaintiff must allege "(1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." Gordon v. Duke, 279 F. Supp. 3d 46, 54 (D.D.C. 2017) (quoting Harris v. D.C. Water & Sewer Auth., 791 F.3d 65, 68 (D.C. Cir. 2015)). While the Secretary argues that Ellis similarly failed to exhaust this claim, the Court need not venture down that road because this count suffers from a more fundamental defect: the allegations have nothing to do with Title VII. The retaliation Ellis cites allegedly stems from his complaints about disability discrimination, but such treatment "is not an act 'made unlawful by this subchapter' — *i.e.*, by Title VII — and hence is not subject to its anti-retaliation provision." McGrath v. Clinton, 666 F.3d 1377, 1382 (D.C. Cir. 2012); see also Tyson v. Brennan, 2018 WL 5927921, at *1 (D.C. Cir. Nov. 7, 2018). If Plaintiff wishes to sue on the basis of such alleged retaliation, the Rehabilitation Act, not Title VII, is his avenue to relief. See, e.g., Porfiri, 121 F. Supp. 3d at 200.

C. Count IV: Hostile Work Environment

Although Plaintiff is silent on the statutory basis for his hostile-work-environment claim in Count IV, the Court follows other judges in this district who have assumed that the

10

Rehabilitation Act permits such a claim to be based on disability. See Congress v. District of Columbia, 324 F. Supp. 3d 164, 169–70 (D.D.C. 2018). Defendant argues both that Ellis has not exhausted his hostile-work-environment claim and that, even if he had, it is facially infirm. Although the Court believes exhaustion has occurred here, the substantive claim comes up short.

Regardless of the basis of the hostile environment, a plaintiff must show that his employer subjected him to "'discriminatory intimidation, ridicule, and insult' that was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Dreiband v. Nielsen, 319 F. Supp. 3d. 314, 322 (D.D.C. 2018) (quoting Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)). Several of Plaintiff's allegations — including that he was "belittled and marginalized" and that Defendant "create[d] an atmosphere of hostility" that forced him to resign, Compl., ¶¶ 33, 46 — are too "conclusory and vague" to state a claim. See, e.g., Dreiband, 319 F. Supp. 3d at 322.

The specific allegations, conversely, are too weak to succeed. For example, Ellis notes that his supervisor failed to attend an ADR session, see Ellis Aff., ¶ 10, but this is hardly "sufficient[ly] severe or pervasive to alter the conditions of [Plaintiff's] employment." Gordon, 279 F. Supp. 3d at 57 (citation omitted) (dismissing hostile-work-environment claim based on "forced meeting" in which supervisor "confronted [the plaintiff] in her office and physically blocked the doorway"). As to Plaintiff's allegation that he was suspended for being AWOL, "'courts typically do not find . . . work-related actions by supervisors to be sufficient for a hostile work environment claim,'" including when based on "workplace reprimands — and punishment flowing from them." Aldrich v. Burwell, 197 F. Supp. 3d 124, 138 (D.D.C. 2016) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Munro v. LaHood, 839 F. Supp. 2d 354, 356 (D.D.C. 2012)). In Aldrich, for instance, the Court dismissed a hostile-work-

11

environment claim based on the same conduct complained of here – *i.e.*, a suspension for failing to comply with leave restrictions. Id. The fact that the AWOL suspension is also alleged to be discriminatory or retaliatory "does not perforce establish a hostile environment." Id. Finally, the comment that his medical documentation was "irrelevant," Compl., ¶¶ 32, 55, may be inappropriate, but this is hardly enough, even if coupled with the other allegations, as "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Faragher, 524 U.S. at 788 (internal quotation marks omitted). The Court will thus grant Defendant's Motion with respect to Count IV as well.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion and dismiss Counts I, II, and IV without prejudice. A separate Order consistent with this Opinion will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 28, 2018